MCGREGOR W. SCOTT
United States Attorney
DAVID GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401 Fresno, CA 93721
Telephone: (559) 497-4000s
Facsimile: (559) 497-4099

NADIA C. PRINZ
Trial Attorney
U.S. Dept. of Justice, Criminal Division
Child Exploitation and Obscenity Section 1400 New York Avenue NW, Suite 600
Washington, DC 20005 Telephone: (202) 514-3740
Facsimile: (202) 514-1793
E-mail: nadia.prinz @usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>STEVEN DALE JONES,<br><br>          Defendant. | CASE NO. 1:18-CR-00179 DAD-BAM-1<br><br>UNITED STATES' TRIAL BRIEF |

The United States of America by and through its attorneys, MCGREGOR W. SCOTT, United States Attorney for the Eastern District of California, DAVID L. GAPPA Assistant United States Attorney, and NADIA PRINZ, Trial Attorney, files this trial brief to aid the court in understanding this case and issues that might arise at trial.

## I. INTRODUCTION AND CASE STATUS

### A. Trial Status

Jury trial is scheduled to begin on Tuesday, October 1, 2019, at 1:00 p.m. before the Honorable Dale A. Drozd, United States District Judge. The government estimates that it can complete the

presentation of its case within two full court days. And assuming the defendant presents a case, the government anticipates that might take up to one additional day. The government believes the jury should be able to commence deliberations no later than October 4, 2019.

### B. Charges

On August 16, 2018, a grand jury charged the defendant in a single-count indictment with receipt and distribution of material involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(2). (ECF 8).

### C. Miscellaneous Matters

Trial by jury has not been waived by the parties.

The government expects to call six witnesses in support of its case-in-chief. Direct testimony from several of these witnesses should be brief.

## II. STATEMENT OF FACTS

### A. An undercover law enforcement agent downloads child exploitation material from an IP address which resolved to the defendant's residence.

On December 26, 2016, Detective Brian Wright, a FBI Louisville Child Exploitation Task Force Officer, working in an undercover capacity, was operating law enforcement software which was capable of receiving files from the BitTorrent network. In the course of this undercover session, Detective Wright identified a computer with the IP address 71.195.170.47, from which he was able to download approximately 773 files which the computer at that IP address was making available. This session targeted IP address 71.195.170.47 as a potential download source because it was previously associated with files of interest by one or more investigators conducting keyword searches and/or hash value searches, over the BitTorrent network. A query on the IP address 71.195.170.47 revealed that it was registered to Comcast Cable Communications. On January 3, Detective Wright sent a subpoena to Comcast for subscriber information regarding this IP address. Comcast provided a response on the same date, which provided subscriber information for the IP address, listing the subscriber name, Alyssa Calanoc, and a service address of 455 East Nees Avenue, Apartment 144, in Fresno, California. Evidence related to these downloads will be used to prove the charged offense.

### B. Detective Wright sends the lead regarding the undercover downloads to FBI Fresno

On January 12, 2017, Special Agent India Jones, with FBI in Fresno received the lead, regarding IP address 71.195.170.47, from the FBI Louisville Child Exploitation Task Force and initiated an investigation into the matter. Through surveillance, SA Jones was able to identify three residents living in apartment 144 at 455 East Nees Avenue: Steven Dale Jones, Alyssa Calanoc, and a minor child. SA Jones also conducted a review of child of the pornography images provided by the Louisville task force.

### C. A search warrant was executed for the defendant's residence and his electronic devices are seized and searched.

On April 13, 2017, FBI agents executed a search warrant, issued in the United States District Court for the Eastern District of California, at 455 E. Nees Avenue, Apartment 144, in Fresno, California.  Agents seized a Seagate external hard drive, two MacBook Pro laptop computers, and a SanDisk thumb drive, in the course of their search. They also took photographs of the location searched and the items seized. Some of the seized items, as well as the photographs, will be admitted as exhibits at trial.

### D. The defendant made relevant admissions in his interview with law enforcement.

On April 13, 2017, SA Jones interviewed the defendant. In the course of this interview, the defendant made multiple relevant admissions. The defendant indicated that he owned an apple laptop and the Seagate hard drive. The defendant confirmed that he utilized a peer-to-peer BitTorrent program, specifically qBitTorrent, for several years. He also admitted that he knows how peer-to-peer software works, though he stated he was unaware he was sharing his child pornography files. Initially, the defendant denied engaging in activity related to child pornography. After further questioning, he confirmed that he is interested in minor females, approximately 16 years of age or high school age.  The defendant also indicated that his favorite child pornography came from the LS Models[1] series, and he preferred petite girls.  He indicated he began viewing child pornography approximately six years prior to the interview.  He became curious about child pornography after first observing it on various

---

[1] LS (Lolita Studios) Models was associated with child pornography and child erotica series that were produced in and distributed from Ukraine from approximately 1999-2005.  It featured as many as 1500 different young girls, often in the age range from 8-16, in poses in which victims were fully clothed to those in which the victims were fully nude and/or engaged in sexually explicit conduct.

pornography sites. The defendant admitted that he viewed child pornography once or twice per month and that he would masturbate to it. The defendant stated he did not utilize search terms to seek out child pornography. Rather, he admitted that for the past few years he utilized Tor[2] to seek out child pornography, specifically a Tor URL (uniform resource locator or location on a network) link known as "Topic Links 2.0" which would then re-route him to other child pornography links.

### E. Forensic examinations of the defendant's computer and external hard drive revealed evidence of receipt of material sexual exploitation of multiple minors.

The forensic examination of the defendant's laptop and separate external hard drive revealed that he had qBitTorrent and Tor applications installed on his silver MacBook Pro, as well as CCleaner, a wiping application. Agents also found over two thousand images of child pornography on the MacBook. Many of these images contain an LS Models logo or "watermark" on the image. The access dates for these files were between March and April 2017, meaning that they were most likely transferred onto the computer during that time frame. Further examination of the MacBook Pro also revealed relevant artifacts in the defendant's internet browser history and bookmarks, as well as torrent URLs. Cached webpage fragments included child pornography videos and images.

A forensic examination of the defendant's Seagate external hard drive revealed that he had approximately 30,000 images of suspected child pornography, all of which were recovered from unallocated space (meaning that the images had been placed onto the computer's hard drive but then deleted), as well as two TOR logos, suggesting that the TOR application had been installed on this device at some point as well.

### III.   APPLICABLE STATUTES AND ELEMENTS OF THE OFFENSE

**A.   Count One: Receipt of Material involving the Sexual Exploitation of Minors, 18 U.S.C. §§ 2252(a)(2)**

1.   Essential Elements

The defendant is charged with receipt of material involving the sexual exploitation of minors in

---

[2] TOR is a free and open-source software that was developed to enable anonymous communication on the internet through use of encryption and multiple, randomly-selected relays or servers.

violation of 18 U.S.C. § 2252(a)(2), which provides:

> Any person who ... knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if –
>
> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (B) such visual depiction is of such conduct.

There are five elements to receipt of material involving the sexual exploitation of a minor: (1) the defendant knowingly received a visual depiction using any means or facility of interstate commerce or in or affecting interstate commerce, by any means including by computer or mail; (2) the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct; (3) such visual depiction was of a minor engaged in sexually explicit conduct; (4) the defendant knew that such visual depiction was of sexually explicit conduct; and (5) the defendant knew that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor. See Ninth Circuit Manual of Model Criminal Jury Instructions § 8.184 Sexual Exploitation of a Child-Transportation of Child Pornography.[3]

The defendant received images of child pornography from the internet when he intentionally used Tor and BitTorrent programs to search for and download images of child pornography from the internet. The government intends to prove knowing receipt by way of the defendant's admissions as well as the evidence of the BitTorrent and Tor software on the defendant's computer. The fact that images were recovered from both his computer and his hard drive corroborates the fact that the defendant received images of child pornography by way of the internet and accessed and stored these images on his computer in the process.

---

[3] The Ninth Circuit Manual of Model Jury Instructions does not have an specific instruction for receipt of child pornography, in violation of § 2252(a)(2). However, it does have an instruction for Transportation of Child Pornography, in violation § 2252(a)(1), for which the statutory elements are largely similar.

      2. "Sexually Explicit Conduct"

The term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2) as actual or simulated:

      (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

      (ii) bestiality;

      (iii) masturbation;

      (iv) sadistic or masochistic abuse; or

      (v) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2256(2).

In determining whether a depiction includes Lascivious Exhibition of the Genital or Pubic Area of Any Person, the trier of fact may consider any of the following factors:

    (1)    Whether the focal point of the depiction is the child's genital or pubic area;

    (2)    Whether the setting of the depiction is sexually suggestive, for instance, the setting is in a place or pose generally associated with sexual activity;

    (3)    Whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child;

    (4)    Whether the child is fully or partially clothed or is nude;

    (5)    Whether the depiction suggests sexual coyness or a willingness to engage in sexual activity;

    (6)    Whether the depiction is intended or designed to elicit a sexual response from the viewer.

United States v. Overton, 567 F.3d 1148, 1151 (9th Cir. 2009) (quoting United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986)).

Additionally, whether a depiction is lascivious should be viewed from the perspective of the photographer, not from the perspective of the minor being photographed. An exhibition of the genitals or pubic area may encompass a visual depiction of a child's genital or pubic area even where those areas are covered by clothing. United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986); United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987); United States v. Villard, 885 F.2d 117, 122 (3rd. Cir. 1989); United States v. Knox, 32 F.3d 733 (3rd Cir. 1994). At trial, the government will offer several images recovered from the defendant's electronic devices which depict minors engaged in sexually

explicit conduct, to include lascivious depiction of the genitals, for consideration by the jury for the purposes of establishing whether the images satisfy elements two and three.

### 3. Interstate Nexus

To prove the interstate nexus, the government plans to offer evidence that the images of the victims were received by the defendant via the internet, which is a means of interstate commerce. See United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007) (the Internet is an instrumentality and channel of interstate commerce). Moreover, none of the charged victims reside or produced their images in California. The government will also show that images of at least two different victims, in two separate known series of child pornography, "Jenny" and "Vicky," which were recovered from the defendant's devices, were produced outside of California. See United States v. Lynn, 636 F.3d 1127,1133 (9th Cir. 2011) (Evidence that visual depictions of child pornography that defendant downloaded from the Internet through a peer-to-peer file sharing program was sufficient to support conviction for receiving and possessing child pornography because the images were created in one state and downloaded onto defendant's computer in another.) Law enforcement agents with personal knowledge of the victims will testify with regard to this element.

Additionally, based on the "country-of-origin label," the defendant's MacBook Pro was manufactured in China, as was his Seagate external hard drive.  Presenting evidence of an electronic device's "country-of-origin labels," which indicate that such device had been manufactured overseas, are sufficient evidence in the Ninth Circuit "to prove that the[y] moved in foreign commerce."  United States v. Fox, 357 Fed. Appx. 64, 65 (9th Cir. 2009) (citing United States v. Patterson, 820 F.2d 1524, 1526 (9th Cir. 1987).

## IV. EVIDENTIARY ISSUES

### A. Computer Files In General

The standard for authenticating computer records is the same for authenticating other records and does not vary simply because the record happens to be originally in electronic form. United States v. Vela, 673 F.2d 86, 90 (9th Cir. 1982).  The witness who testifies to the authenticity of the computer

record need not have special qualifications and need not have programmed the computer or even understand the technical operation of a computer. United States v. Salgado, 250 F.3d 438, 453 (6th Cir. 2001) ("it is not necessary that the computer programmer testify in order to authenticate the computer generated records.")  Instead, the witness need only have first-hand knowledge of the facts to which they testify, such as examining or seizing the computer from which the records were obtained. United States v. Whitaker, 127 F.3d 595, 601 (7th Cir. 1997).

The authenticity of the computer program itself is also generally not a bar to the admission of evidence derived from the use of such a program. Such a challenge is defeated by providing sufficient facts to support a finding that the records are trustworthy and the opposing party is afforded the opportunity to inquire into the accuracy of such records. United States v. Briscoe, 896 F.2d 1476 1494-95 (7th Cir. 1990).  Typically, the reliability of a computer program can be established by showing that the users of the program actually do rely upon it on a regular basis. Id., at 1494 (holding that computerized records held by a telephone company were admissible).

In the present case, Agents Magallon and Ratzlaff, who forensically analyzed the computer device and hard drive underlying the government's charges, will testify that computer programs, such as FTK Imager and Internet Evidence Finder (IEF), were used to retrieve much of the information found on the seized devices.  Such programs are well known and are a generally accepted means of conducting a forensic examination of a computer for the purpose of retrieving evidence.  Considering the fact that defense experts commonly rely upon the same program, the government has neither received nor anticipates receiving any objections to the use exhibits extracted with FTK Imager or IEF. See, e.g., United States v. Giberson, 527 F.3d 882, 885-889 (9th Cir. 2008) (endorsing use of similar program "iLook" as forensics tool in child pornography cases).

### B. Images of Child Pornography

The government intends to display several images depicting child pornography that were either received from and/or recovered from the defendant's electronic devices. Given the very high burden of proof generally, and that the government will need to prove the defendant acted intentionally and knowingly in committing the charged offense, the government should be given wide latitude in

displaying each of these images in court. Since the government's burden is extremely high - as the defense will argue in its closing - the government should "not be restricted to a modest quantum of evidence that will support the indictment." United States v. Gallo, 543 F.2d 361, 365 (D.C. Cir. 1976). See also United States v. Ganoe, 538 F.3d 1117, 1123 (9th Cir. 2008) (district court did not abuse its discretion in ruling that probative value of selection of images found on computer in defendant's home was not substantially outweighed by danger of unfair prejudice).

The government is also generally permitted to present child pornographic images to the jury for the purpose of proving that actual minors are depicted. See United States v. Salcido, 506 F.3d 729, 733 (9th Cir. 2007). Moreover, since whether an image depicts a minor engaged in sexually explicit conduct is an issue for the fact-finder, the government must be allowed to show depictions of such conduct in order for the members of the jury to be able to make such a determination.

          1.        Images received from the defendant via the undercover downloads.

The government intends to offer as exhibits approximately three of the hundreds of image files that Detective Wright downloaded from the defendant's computer on December 26, 2016. These images are relevant and admissible because they are intrinsic evidence of the charged offense. The fact that these files contain child pornography tends to prove the defendant's receipt of child pornography was knowing and intentional, as well as that they tend to prove the medium used to commit the charged offense, namely his use of BitTorrent to obtain images of child pornography. Further, these images serve to corroborate the defendant's admissions that he engaged in the offense conduct over the charged period of time, that he intentionally sought such material, and that he used BitTorrent, specifically, among other programs to receive such material.

Aside from, and in addition to, being intrinsic to the charged offense, these particular images are also relevant and admissible under Federal Rule of Evidence 414. Rule 414 provides in relevant part that "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414. Under the definitions given in the rule, "child molestation" includes any conduct prohibited by 18 U.S.C. Chapter 110. Id.  In deciding admissibility,

pursuant to Rule 414, a court is required to consider:(1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial. See United States v. Hanson, No. 18-30037, 2019 WL 4051595, at *4 (9th Cir. Aug. 28, 2019) (citing United States v. LeMay, 260 F.3d 1018, 1026-28 (9th Cir. 2001). If the evidence meets these criteria, then the court must also decide whether under Rule 403 its prejudicial impact substantially outweighs its probative value. Id. If not, the evidence is admissible.

Here, the evidence of the files received by the undercover detective meets the above criteria and is not more prejudicial than probative. Receipt and distribution of files of child pornography are similar crimes; indeed, they are proscribed by the same section of the statute, § 2252(a)(2), and here both the receipt and the distribution were via peer- to peer file sharing software. These acts are close in time, as the undercover download occurred in December of 2016, which is only a few months from the date of the seizure of the devices, and is within the charged time period of January 2012- April 2017. Moreover, the defendant's admissions indicate that he frequently and regularly engaged in the offense conduct during this time period. The transmitted undercover download files tend to prove that the defendant knowingly received child pornography, and that he intended to do so via peer-to-peer file sharing software which accessed the internet.

Nor is the evidence more prejudicial than probative. It is highly probative, in that it corroborates important aspects of the defendant's admissions, especially in light of the fact that much of the recovered evidence was found in unallocated space, due to the defendant's apparent efforts at anonymization and deletion. And because the acts are similar and closely related, the download evidence is not more prejudicial than any other evidence intrinsic to the charge.  In addition, the court may always choose to give a limiting instruction regarding the purpose for which this evidence is to be considered by the jury.  This court has previously held that uncharged sexual misconduct, in the form of evidence of child pornography on defendant's external hard drive, was admissible in a receipt case pursuant to Rule 414. *United States v. Smith*, No. 113CR00194DADBAM, 2016 WL 2939396, at *2 (E.D. Cal. May 20, 2016) (possession of child pornography on the external hard drive was admissible evidence of an act of "child molestation" under Rule 414 and 404(b) where defendant admitted to owning the external hard

drive that was seized by authorities on the same day as the material underlying the charge set out in the indictment and occurred around the same time).

### C. Business Record Authentication

At trial, the government will introduce subpoena returns from Comcast Cable Communications, which the Government will authenticate by way of a Certification pursuant to Federal Rule of Evidence 902(11). Pursuant to Rule 902(11), an original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court, is self-authenticating. Fed. R. Evid. 902(11). Here, the government has received a signed and notarized Business Record Certification from Comcast's custodian of records. The government has made this certificate available for review by the defense and did not receive any objection to its use. For these reasons, the subpoena return information is admissible as a self-authenticating document at trial.

### D. Defendant's Statements

The government intends to introduce statements made by the defendant on April 13, 2017, about his conduct relating to the charged offenses. Under the Federal Rules of Evidence, a defendant's statement is admissible only if offered against him; the defendant conversely may not elicit his own prior statements. Fed. R. Evid.801(d)(2)(A); <u>United States v. Fernandez</u>, 839 F. 2d 639 (9th Cir. 1988). The government may also introduce statements of the defendant to third persons under Federal Rule of Evidence 801(d)(2).

#### 1. Admissions by Party-Opponent

A statement is not hearsay if "...(2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity..."Federal Rule of Evidence 801(d)(2)(a). Admissions by a party are treated as non-hearsay under Rule 801(d)(2)(A) and are thus admissible for their truth. Bocchino & Sonenshein at 137.

#### 2. Statement That Party Adopts

A statement is not hearsay if "... The statement is offered against a party and is . . . (B) a statement of which the party has manifested an adoption or belief in its truth ...." Federal Rule of

Evidence 801(d)(2)(B). A statement made by another person that is subsequently adopted by the party-opponent is regarded as an admission of the party-opponent and is therefore admissible for its truth under Rule 801(d)(2)(B). Bocchino & Sonenshein at 137. A statement may be adopted by the party-opponent either expressly or through silence. Id.; See, e.g., United States v. Schaff, 948 F.2d 501 (9th Cir. 1991) (defendant's silence during statement made in his presence by his sister regarding instructions he had given her was admissible); United States v. Villarreal, 764 F.2d 1048 (5th Cir. 1985) (defendant's failure to disagree could reasonably be taken as an admission).

### 3. Statements Offered by the Defendant

If the government chooses not to introduce statements made by the defendant, the defendant may not introduce those statements as they would be hearsay (as they would not be offered by a party-opponent).

### 4. Observations of the Defendant's Demeanor During Questioning

The government does not believe that the defendant's physical demeanor when responding to questions should be an issue. But if it becomes necessary to elicit this testimony, even when a subject is questioned in a custodial setting a law enforcement officer can later testify about a defendant's physical response to being confronted with incriminating evidence. See United States v. Velarde-Gomez, 269 F.3d 1023, 1031 (9th Cir. 2001).

## E. Evidence Found During the Search of Defendant's Residence

The government will offer items of evidence that were seized from defendant's residence. The prosecution need only prove a rational basis from which the trier of fact may conclude that the exhibits did, in fact, belong to the defendant. Fed. R. Evid. 401(a); United States v. Blackwell, 694 F.2d 1325, 1330 (D.C. Cir. 1982); United States v. Sutton, 426 F.2d 1202 (D.C. Cir. 1969).

## F. Demonstrative Exhibits/Summaries and Charts

The government may introduce or use at trial summaries and charts. The government may also use some of its charts and summaries during the opening statement, the presentation of its case-in-chief

and/or during closing argument. These charts and summaries will substantially assist the court in understanding the government's proof in this case.

It is well-established that a trial court, in its discretion, may allow the presentation of summary evidence to guide and assist a trier of fact in understanding and judging a factual controversy. See, Fed. R. Evid. 1006; United States v. Skalicky, 615 F.2d 1117, 1120-1121 (5th Cir. 1980); United States v. Cooper, 464 F.2d 648, 656 (10th Cir. 1972). A foundation for the admission of each chart and summary will be laid through the testimony of various witnesses, who will testify that the charts and summaries accurately reflect information contained in documents already in or to be admitted into evidence. See United States v. Lemire, 720 F.2d 1327, 1349 (D.C. Cir. 1983); United States v. Pollack, 417 F.2d 240, 241 (5th Cir. 1969).

Courts have repeatedly allowed the use of charts and summaries similar to the ones the government may intend to use in this case. United States v. Stephens, 779 F.2d 232 (5th Cir. 1985)(simple flow charts tracing the defendant's use of loan proceeds); United States v. Porter, 821 F.2d 968, 974-975 (4th Cir. 1987)(summary of telephone numbers); United States v. Orlowski, 808 F.2d 1283, 1289 (8th Cir. 1986)(charts tracing the disposition of the checks generating defendant's receipts and reflecting defendant's total unreported income). Courts allow the charts when the evidence involves numerous exhibits which are difficult to examine in court without the charts or the charts are helpful to the jury. United States v. Stephens, 779 F.2d at 239; United States v. Scales, 594 F.2d 558, 564 (6th Cir. 1979).

### G. **Stipulations**

To date, the parties have not filed any stipulations with the court. Counsel for the government may again contact counsel for the defendant to see what can further be done to present the case as efficiently as possible. The parties will advise the court of ultimate the scope of its stipulations before the trial begins.

### H. **Judicial Notice**

Under the doctrine of judicial notice and Rule 201 of the Federal Rules of Evidence, if requested

by a party, the court must take judicial notice of any undisputed facts which are either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201.  The government may, for example, ask the court to take judicial notice of certain undisputed facts, such as Fresno, California, being within the Eastern District of California.

### I.      Cross-Examination of Defendant's Character Witnesses

The government anticipates that the defendant may call character witnesses.  In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony (only) as to reputation or by testimony in the form of an opinion.

On cross-examination of the defendant's character witness, the government may inquire into specific instances of the defendant's past conduct relevant to the character trait at issue.  Fed. R. Evid. 405(a); Michelson v. United States, 335 U.S. 469, 479 (1948).  However, the defendant may not ask about specific instances of such conduct on direct examination.  Fed. R. Evid. 405(a).

### J.      Use of Witness Summaries and PowerPoint Presentations

Because of the voluminous and highly technical nature of some of the computer evidence in this case, the government intends to rely on the testimony of Detective Wright, Special Agent Jones, and forensic examiners Jaime Magallon and Joshua Ratzlaff to summarize and analyze the contents of the information retrieved from the defendant's computer and external hard drive.  One or more components of the forensic reports may be offered as evidence in this regard.

Federal Rule of Evidence 1006 provides that "the contents of voluminous writings, recordings or photographs which cannot be conveniently examined in court may be presented in the form of a chart, summary or calculation."  The Ninth Circuit has recognized that summary evidence "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses."  United States v. Shirley, 884 F. 2d 1130, 1133 (9th Cir. 1989), quoting United States v. Lemire, 720 F. 2d 1327, 1348 (D.C. 1983); see also United States v. Meyers, 847 F. 2d

1408, 1412 (9th Cir. 1988) (approving the use of a summary witness where the sequence of events was confusing and the chart contributed to the clarity of presentation).

Although the underlying materials upon which the summary testimony is based must be "admissible," they need not be actually admitted into evidence. United States v. Meyers, 847 F. 2d at 1412. The foundation for admission of such a summary is simply that the records are voluminous and that in-court examination would be inconvenient. United States v. Duncan, 919 F. 2d 981, 988 (5th Cir. 1990).

### K.  Chain of Custody

Evidence regarding the chain of custody concerning an item of seized evidence goes to the weight as opposed to the admissibility of the evidence. United States v. Matta-Ballesteros, 71 F.3d 754, 769 (9th Cir. 1995); United States v. Robinson, 967 F.2d 287, 292 (9th Cir. 1992). In fact, so long as the prosecution "introduce[s] sufficient proof so that a reasonable juror could find the [proffered evidence is] in substantially the same condition as when they were seized", the evidence is admissible so long as there is a "reasonable probability the [evidence has] not been changed in important respects." Matta-Ballesteros, 71 F.3d at 768 (citing to United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991); See also Fed. R. Evid. 901(a).

Furthermore, "in the absence of any evidence of tampering, a presumption exists that public officers 'properly discharge[d] their official duties." Harrington, 923 F.2d at 1374 (citing to United States v. Gallego, 276 F.2d 914, 917 (9th Cir. 1960)). Conversely, "merely raising the possibility of tampering is not sufficient to render evidence inadmissible." Harrington, 923 F.2d at 1374 (citing to United States v. Vansant, 423 F.2d 620, 621 (9th Cir. 1970)).

### L.  Reciprocal Discovery

To date, the government has provided more than eight hundred pages of discovery to the defense and has turned over items as they have been unearthed or otherwise developed. The government will continue to do this. Since the inception of this prosecution, the government has made available for the

defense review all of the items of evidence, whether intended to be used as trial exhibits or not, over which it has custody or control.

The government has requested but received no reciprocal discovery. Should the defendant seek to introduce any evidence that should have been provided to the government as reciprocal discovery, the government previously has successfully moved to exclude it, in other cases, under Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

### M. Presentation of Witnesses

It is possible that the government may have to call certain witnesses out of order, or re-call witnesses to testify to various events to maintain a chronological presentation. The government will strive for an orderly presentation of the evidence to assist the court and the defendant in understanding the evidence being presented.

### V. WITNESS EXCLUSION AND CASE AGENT DESIGNATION

The government moves under Rule 615 of the Federal Rules of Evidence that all witnesses be excluded from trial until their testimony has been completed, with the exception of the government's lead agent, FBI Special Agent India Jones. United States v. Little, 753 F.2d 1420, 1441 (9th Cir. 1985). These witnesses are excepted from any sequestration order as their knowledge qualifies them as essential to counsel in understanding and presenting the case properly. See, e.g., United States v. Seschillie, 310 F.3d 1208 (9th Cir. 2002); United States v. Connors, 894 F.2d 987 (8th Cir. 1990).

### VI. CONCLUSION

The foregoing is a summary of points the government anticipates may arise at trial. Should any

///
///
///
///
///
///

legal issues arise that have not been covered in this trial brief, the United States respectfully requests leave to submit such further memoranda as may be necessary.

Dated: September 25, 2019

McGREGOR W. SCOTT
United States Attorney

/s/ DAVID GAPPA
DAVID GAPPA
Assistant United States Attorney

/s/ NADIA PRINZ
NADIA PRINZ
Trial Attorney